1
2
3
4
5
6
7

8                        **UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   DISH NETWORK L.L.C., ECHOSTAR            **Case No. 1:13-cv-00107-LJO-SKO**
     TECHNOLOGIES L.L.C., and
12   NAGRASTAR LLC, et al.,                   **FINDINGS AND RECOMMENDTION
                                              THAT PLAINTIFFS' MOTION FOR
13                  Plaintiffs,               DEFAULT JUDGMENT BE GRANTED**

14          v.                                (Doc. 10)

15   ARMANDO GONZALEZ,
                                              **OBJECTIONS DUE:  28 DAYS**
16                  Defendant.

17

18   _____/

19                              **I.   INTRODUCTION**

20          On May 1, 2013, Plaintiffs DISH Network L.L.C., EchoStar Technologies L.L.C. and

21   NagraStar LLC (collectively "Plaintiffs") filed the present motion for default judgment against

22   Defendant Armando Gonzalez ("Defendant").  (Doc. 10.)  The motion was referred to this Court

23   pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  A hearing on Plaintiffs' motion was held on

24   June 12, 2013.   Timothy M. Frank, Esq., appeared telephonically on behalf of Plaintiffs, and

25   Defendant did not appear.  For the reasons set forth below, the Court RECOMMENDS that Plaintiffs'

26   motion for default judgment be GRANTED.

27

28

                                              1

## II.    PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs filed this civil action on January 24, 2013. (Doc. 1.)  The complaint alleges violations of 17 U.S.C. § 1201 *et seq.*, 47 U.S.C. § 605 *et seq.*, and 18 U.S.C. §§ 2511 *et seq.*  The suit is based on Defendant's alleged unlawful circumvention of the DISH Network security system and unlawful interception and receipt of copyrighted, subscription-based DISH Network satellite television programming.  (Doc. 1, ¶ 8.)

Plaintiff DISH Network, L.L.C. ("DISH Network") is a provider of satellite television programming.  (Doc. 1, ¶ 9.)  DISH Network uses high-powered satellites to deliver its broadcasts to customers who have paid the required subscription fee or the purchase price for pay-per-view broadcasts.  (Doc. 1, ¶ 10.)  To receive DISH Network programming, a subscriber must possess a satellite television system consisting of a compatible dish antenna, receiver, and a smart card.[1]  (Doc. 1, ¶ 14.)  Each smart card contains a secure embedded microprocessor which functions as a security computer when inserted into a receiver.  (Doc. 1, ¶ 17.)  The receiver and smart card work in conjunction to convert or unscramble DISH Network's encrypted satellite signal to viewable programming.[2]  (Doc. 1, ¶ 18.)  In effect, each receiver and smart card is programmed to decrypt only television programming corresponding to the level of service that the subscriber is authorized to receive.  (Doc. 1, ¶ 18.)

Defendant is alleged to have unlawfully circumvented DISH Network's security system by subscribing to two pirate television services known as NFusion Private Server ("NFPS") and IKS Rocket.  (Doc. 1, ¶ 8.)  Through NFPS and IKS Rocket, Defendant illegally acquired the DISH Network satellite signal and viewed DISH Network programming absent authorization.  (Doc. 1 ¶ 8.)  Thomas Dixon ("Dixon") was the individual who sold subscriptions to NFPS and IKS Rocket.  (Doc.

---

[1]  Plaintiff EchoStar Technologies, L.L.C. ("EchoStar") designs and distributes receivers, dish antenna, and other equipment for DISH Network.  (Doc. 1, ¶ 14.)  Plaintiff NagraStar LLC ("NagraStar") provides smart cards and other technology to DISH Network.  (Doc. 1, ¶ 14.)

[2]  The EchoStar receiver processes an incoming DISH Network satellite signal by locating an encrypted part of the transmission and forwarding that message to the smart card.  (Doc. 1, ¶ 17.)  The smart card unlocks the message, uncovering a control word or "key" which is then transmitted back to the receiver to decrypt the DISH Network satellite signal.  (Doc. 1, ¶ 17.)

1, ¶ 26.)  Dixon provided DISH Network with copies of his business records pertaining to Defendant. (Doc. 1, ¶ 26.)  The records showed that Defendant purchased NFPS and IKS Rocket on approximately November 2, 2011.[3]  (Doc. 1, ¶ 24.)  The records also indicate that Defendant sent private messages on February 22, 2011, to "nfps staff" and "bigevil69" inquiring about the server and stated that he was "having trouble with 2 donation numbers not connecting." (Doc. 10-2, Rogers Decl., ¶ 6.)  Further, on February 24, 2011, Defendant sent private messages to "bigevil69," where Defendant identified two separate 14-digit codes and stated the codes were "working perfect for months till today."  (Doc. 10-2, Rogers Decl., ¶ 6.)  Prior to 2011, Defendant sent a private message to "nfps staff" on October 22, 2010, asking if he could pay for a "donation" via PayPal.  (Doc. 10-2, Rogers Decl., ¶ 6.)

According to the complaint, Plaintiffs have the authority of the copyright holders to protect the works from unauthorized reception and viewing.  (Doc. 1, ¶ 12.)  Count I of the complaint claims a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1) (Circumvention of Copyright Protection Systems), alleging that Defendant willfully circumvented the DISH Network security system for purposes of commercial advantage or private financial gain.  (Doc. 1, ¶¶ 29-32.) Plaintiffs seek the greater of actual damages plus any profits realized by Defendant resulting from the alleged violations, or statutory damages in the amount of $2,500 for each violation.  (Doc. 1, p. 8, ¶ C.)

Count II asserts a violation of 47 U.S.C. § 605(a) (Unauthorized Publication or Use of Communications) based on the same allegations.  (Doc. 1, ¶¶ 38-40.)  Again, Plaintiffs seek the greater of actual damages plus any profits realized by Defendant resulting from the alleged violations, or statutory damages in the amount of $10,000 for each violation.  (Doc. 1, p. 8, ¶ D.)

---

[3]  Documents concerning Defendant include an (1) an email confirming a $30 payment purchase of a subscription on November 2, 2011, via PayPal under the username "chene@live.com"; (2) an email confirming a $24.50 payment on December 16, 2011, via PayPal under the same username; (3) a file titled "NFPS sold 11-01-11" with Defendant's email address from above, a corresponding 14-digit passcode, and the username "fpsfreak," all corresponding with the November PayPal payment; and (4) a file titled "Rockets on port 35922.rtf" with Defendant's email address from above, a corresponding 14-digit passcode, and the same username from above, all corresponding with the December PayPal payment.  (Doc. 10-2, Rogers Decl., ¶ 5.)

Count III asserts a violation of 18 U.S.C §§ 2511(1)(a) and 2520 (Electronic Communications and Privacy Act) based on the same allegations. (Doc. 1, ¶¶ 38-40.)  Plaintiffs seek the greater of actual damages plus any profits realized by Defendant resulting from the alleged violations, or statutory damages in the amount of $10,000 for each violation. (Doc. 1, p. 8, ¶ E.)

On February 6, 2013, the summons was returned showing that the summons and complaint were personally served on Defendant on January 28, 2013.  (Doc. 6.)  Defendant did not file a response to the complaint within the required 21-day period, and on February 26, 2013, pursuant to Plaintiffs' request, the Clerk of the Court entered Defendant's default.  (Docs. 7, 8.)  On May 1, 2013, Plaintiffs filed this motion for default judgment against Defendant.  (Doc. 10.)  Defendant was served with Plaintiffs' motion, but did not oppose it.  (*See* Doc. 6 (Proof of Service).)

## III.   DISCUSSION

**A.    Legal Standard for Default Judgment**

Federal Rule of Civil Procedure 55(b)(2) provides that judgment may be entered as follows:

> By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial– when, to enter or effectuate judgment, it needs to:
> > (A)    conduct an accounting;
> > (B)    determine the amount of damages;
> > (C)    establish the truth of any allegation by evidence; or
> > (D)    investigate any other matter.

Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Dundee Cement Co. v. Highway Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include:  (1) the possibility of prejudice to the plaintiffs, (2) the merits of plaintiffs' substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the

4

strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

**B.   Application of the Eitel Factors**

Here, the summons and the complaint were properly served upon Defendant, the default was properly entered, and, as discussed below, the complaint is sufficiently well-pled. (Doc. 6.)  *See Eitel*, 782 F.2d at 1471-72.  Because Defendant is in default, he is deemed to have admitted to willfully violating Sections 2511 and 2520.  *See TeleVideo Sys., Inc.*, 826 F.2d at 917-18. The Court considers the application of the *Eitel* factors below.

**1.     Possibility of Prejudice to Plaintiffs**

Typically, this factor weighs in favor of default judgment because, if default judgment is not entered against a defendant who has refused to participate in the litigation, the plaintiffs may be effectively denied a remedy until such time as the defendant participates and makes an appearance in the litigation – which may never occur.  Denying a plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor.  *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).  Here, Defendant has failed to respond to the complaint, and Plaintiffs have no other means by which to recover damages.  Thus, this factor weighs in favor of granting default judgment.

**2.     Merits and Sufficiency of Plaintiffs' Complaint**

The next relevant *Eitel* factors include consideration of the merits of the substantive claims pled in the complaint, as well as the general sufficiency of the complaint.  In evaluating the adequacy of the complaint, courts determine whether it sufficiently states a claim that supports the relief sought.  *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotations omitted).

Title 18 of the United States Code, Section 2511 is part of the Electronic Communications Privacy Act ("ECPA") and prohibits any person from "intentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept, or endeavor to intercept, any wire, oral, or electronic communication."  Although Section 2511 is a criminal provision which does not itself

provide a private right of action, 18 U.S.C. § 2520(a) "does provide a private cause of action for violation of Section 2511(1)(a)." *See EchoStar Satellite, L.L.C. v. Viewtech, Inc.*, 543 F. Supp. 2d 1201, 1208 (S.D. Cal. 2008); *see also DIRECTV, Inc. v. Brower*, 303 F. Supp. 2d 856, 863 (W.D. Mich. 2004.) ("[I]t is well established that § 2520(a) provides a private right of action for violations of § 2511.") Section 2520(a) provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a).

To state a claim under Section 2520(a) for a violation of Section 2511, the plaintiff must plead facts showing that the defendant intentionally intercepted the plaintiff's satellite television programming without proper authorization. *See DIRECTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (satellite television signals are among the "electronic communications" protected by ECPA, prohibiting unauthorized receipt and use of radio communications for one's own benefit or for benefit of another not entitled thereto). In *DISH Network, LLC v. DelVecchio*, No. 11-cv-6297-CJS, 2011 WL 4747848 at *3-4 (W.D.N.Y. Oct. 7, 2011), the court determined that allegations that a consumer utilized a key sharing television service and server to obtain a satellite television provider's de-scrambling control words to illegally receive, intercept, and de-scramble providers copyrighted television programmer sufficiently alleged a claim under the ECPA.

In the complaint, Plaintiffs assert that they have the authority to protect the television programming from unauthorized reception and viewing. (Doc. 1, ¶ 12.) Plaintiffs allege that Defendant unlawfully intercepted DISH Network satellite television programming through Defendant's subscription to NFPS and IKS Rocket. (Doc. 1, ¶ 8.) Defendant accessed NFPS and IKS Rocket using an unauthorized receiver. (Doc. 1, ¶ 27.) Each time Defendant tuned his unauthorized receiver to an encrypted DISH Network channel, he would have to enter the control word the receiver requested. (Doc. 1, ¶ 27.) The NFPS or IKS Rocket Server would return the control word to Defendant. (Doc. 1, ¶ 27.) Defendant then used the control word to decrypt the Dish Network satellite signal, and viewed the programming without a subscription. (Doc. 1, ¶ 27.) Plaintiffs also provide evidence from a website that allowed members to exchange private messages and offered a

6

forum where members discussed the unauthorized reception of the Dish Network satellite signal. (Doc. 10, ¶ 6.)   In the forum, Defendant, using username "fpsfreak" and email address "chene@live.com," sent a private message on February 24, 2011, to username "bigevil69" stating the codes were "working perfect till today." Later, on April 17, 2011, Defendant posted under a thread titled "how many people are down on nfps" where Defendant stated "just went down right now," followed by "oh nm, rebooted the sv unit ☺ all is good."  (Doc. 10-2, Rogers Decl., ¶ 6.)  Based on these allegations, Plaintiffs have adequately set forth a claim under Sections 2520(a) for a violation of Section 2511.

Plaintiff's claims for violation of Sections 2511 and 2520 are generally well pled and the claims for which Plaintiffs seeks damages in default judgment are sufficiently stated.[4]  Therefore, this factor weighs in favor of granting default judgment.

**3.    The Sum of Money at Stake**

The fourth *Eitel* factor, the sum of money at stake, also weighs in favor of default judgment. Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions.  *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).  Here, Plaintiffs seek an award of $10,000 for statutory damages pursuant to 18 U.S.C. § 2520(c)(2)(B).  Under the statute, Congress has expressly permitted a court to assess damages as the greater of (1) actual damages suffered by the plaintiff and any profits made by the violator, or (2) statutory damages of $100 a day for each day of violation or $10,000.  Because Congress has expressly authorized a court to award damages of $10,000, the Court cannot conclude that this amount is per se unreasonable such that it would preclude or weigh against the entry of default judgment.  This factor weighs in favor of default judgment.

**4.    Possibility of a Dispute Concerning Material Facts**

The Court also considers the possibility of a dispute as to any material facts.  With regard to

---

[4] Plaintiffs also pled counts for violation of 17 U.S.C. § 1201(a)(1) and for violation of 47 U.S.C. § 605(a).  In the motion for default judgment, however, Plaintiffs do not seek an award of damages pursuant to these sections.

7

this factor, no genuine issue of material fact is likely to exist because the allegations in the complaint are taken as true.  *Televideo Sys.*, 826 F.2d at 917-18.  Defendant has been duly served with process based on the record and papers on file, and has failed to respond to Plaintiffs' complaint within the time permitted by law.  Defendant has not requested that the entry of default be set aside.   As Defendant is in default, the well-pled allegations in the complaint are deemed true.  Accordingly, this factor favors entry of default judgment.

**5.      Whether Default Was Due to Excusable Neglect**

There is no evidence that Defendant's failure to participate in the litigation is due to excusable neglect.  Defendant was served with the summons and complaint, along with a copy of Plaintiffs' motion for default judgment, and therefore has been made aware of the lawsuit.  (*See* Docs. 6, 10.) There is no evidence that Defendant's default and failure to participate in the litigation are due to excusable neglect.  Thus, this factor weighs in favor of granting default judgment.

**6.      Policy Favoring Decisions on the Merits**

This factor inherently weighs strongly against awarding default judgment in every case.  In the aggregate, however, this factor is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment.

**7.      Conclusion**

On balance, as discussed above, the *Eitel* factors weigh in favor of awarding default judgment. The amount of damages to be awarded upon default judgment is discussed below.

**C.      Damages Pursuant to 18 U.S.C. 2520(c)(2)**

Damage allegations are not taken as true; they must be proven.  *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).  In their motion, Plaintiffs seek default judgment and an award of damages pursuant to 18 U.S.C. §§ 2511(1)(a) and 2520 (statutory damages) in the amount of $10,000 against Defendant for unlawfully intercepting and receiving DISH Network television programming.  (Doc. 10-1, 6:27-7:3.)

Section 2520(a) provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate."

18 U.S.C. § 2520(a).  Section 2520(c) is divided into two parts.  The first provides a damage remedy for a violation that "is the private viewing of a private satellite video communication that is not scrambled or encrypted."  18 U.S.C. § 2520(c)(1).  Subsection (c)(2) provides a damage remedy for "any other action under" the section.  18 U.S.C. § 2520(c)(2).

Thus, for a violation involving interception of scrambled or encrypted electronic communications, as is the situation presented by the allegations of Plaintiffs' complaint, Section 2520(c)(2) provides that a "court may assess as damages whichever is the greater of (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is greater of $100 a day *for each day* of violation or $10,000." 18 U.S.C. § 2520(c)(2).  The Court has discretion under Section 2520 to award either the statutory sum or no damages at all.  *See DIRECTV, Inc. v. Brown*, 371 F.3d 814, 818 (11th Cir. 2004); *see also Dorris v. Absher*, 179 F.3d 420, 430 (6th Cir. 1999) (citing *Reynolds v. Spears*, 93 F.3d 428, 435 (8th Cir. 1996)); *Nalley v. Nalley*, 53 F.3d 649, 654 (4th Cir. 1995); *DIRECTV, Inc. v. Barczewski*, 604 F.3d 1004, 1009 (7th Cir. 2010) ("[T]he district court has discretion not to award statutory damages under the statutory formula.").

The Sixth Circuit has provided the following framework for analyzing damages under Section 2520(c)(2):

> (1) The court should first determine the amount of actual damages to the plaintiff plus the profits derived by the violator, if any;
>
> (2) The court should next ascertain the number of days that the statute was violated, and multiply by $100;
>
> (3) The court should then tentatively award the plaintiff the greater of the above two amounts, unless each is less than $10,000, in which case $10,000 is to be the presumed award;
>
> (4) Finally, the court should exercise its discretion to determine whether the plaintiff should receive any damages at all in the case before it.

*Dorris*, 179 F.3d at 430.  As the award of damages under Section 2520 is discretionary, the Court may elect to award either the statutory sum or no damages at all.  *Id.*  The Court may not, however, award an amount that falls between those two figures.  *See DIRECTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122,

1132 (M.D. Ala. 2004); *see also DIRECTV, Inc. v. Walsh*, 540 F. Supp. 2d 553, 561 (M.D. Pa. 2008) ("The question then is whether to award no damages or $10,000."); *DIRECTV, Inc. v. Hedger*, 322 F. Supp. 2d 879, 882 (W.D. Mich. 2004) ("under [section 2520(c)(2)], the Court may exercise its discretion to either award DIRECTV $10,000 or to award no damages at all"); *DIRECTV, Inc. v. Griffin*, 290 F. Supp. 2d 1340, 1347-48 n. 28 (M.D. Fla. 2003) ("Although a district court has the discretion to award the full amount of statutory damages authorized under § 2520(c)(2) or none at all, Congress did not grant district courts authority to prescribe an amount falling between those two choices."); *Dish Network, LLC v. Rounds*, No. 11-241-Erie, 2012 WL 1158798, at *4 (W.D. Pa. Apr. 6, 2012) ("Although a court has the discretion whether to award statutory damages, once it decides to do so, it 'has no discretion as to the amount.'"); *Delvecchio*, 2011 WL 4747848, at * 6 ("Congress wrote § 2520(c)(2) to give discretion to the Court in determining whether to award damages, but the plain language of the statute does not . . . authorize the Court to grant anything other than the damages permitted by the statute . . . [T]he discretion provided to it allows it only to decide between no damages and $10,000.") [5]

### 1.    Neither Actual Damages to Plaintiffs nor Profits Derived From Defendant Exceed $10,000

In their motion, Plaintiffs identify their actual damages as lost programming and sales of receiving equipment to authorized subscribers.[6]   (Doc. 10-1, 9:16-20.)   Plaintiffs also claim that Defendant's piracy undermines the significant investments made to prevent such "stealing of DISH Network programming."   (Doc. 10-1, 12:2-4.)   Plaintiffs further allege that Defendant subscribed to NFPS and IKS Rocket, and have identified that each time Defendant tuned his receiver to an encrypted DISH Network channel, the control word for that particular channel was requested from the NFPS or IKS Rocket server, and the NFPS or IKS Rocket server returned the control word to

---

[5]  In *DIRECTV, Inc. v. Barczewski*, 604 F.3d 1004, 1009 (7th Cir. 2010), the court suggested that awarding less than $10,000 but more than nothing may be within the discretion afforded the court under the statute.  The Seventh Circuit's discussion in this regard, however, was dicta.  *Id.* ("we add a few words about one question we are *not* deciding:  Whether a judge has discretion to award damages under § 2520(c), but less than the maximum").

[6]  Plaintiffs' average revenue per authorized subscriber is approximately $70 per month.  (Doc. 10-3, Duval Decl., ¶ 21.)

Defendant, who then used the control word to decrypt the DISH Network signal to view DISH Network programming without authorization.  (Doc. 10-1, 3:27-4:6.)  Furthermore, Plaintiffs contend that Defendant had "full access" to its programming, including premium and pay-per-view channels, a value which exceeds the average monthly subscription.  (Doc. 10-1, 12:24-26.)

Defendant's NFPS subscriptions covered approximately a two year time frame from October 2010 to November 2012.  In February 2011, Defendant stated that NFPS had been working for months; similar statements regarding Defendant's use of NFPS were made in March and April 2011. Defendant renewed his subscription to NFPS in November 2011, indicating that the IKS service presumably had been working for him.  Nevertheless, Plaintiffs concede that the exact amount of time Defendant used NFPS to intercept DISH Network programming cannot be determined from the evidence available.  Part of Plaintiffs' difficulty in this regard stems from the fact that Defendant has not appeared in this case, and there has been a lack of opportunity to conduct discovery.

With respect to actual costs incurred by Plaintiffs' investment in security technology to prevent piracy, presumably an accurate assessment of damages would require that such investments be totaled, and then divided by the total number of pirates intercepting DISH Network programming. Considering that the number of pirates would be virtually impossible to ascertain, this amount would present only a rough estimate at best.  *See DIRECTV, Inc. v. Huynh*, No. C 04-3496 CRB, 2005 WL 5864467, at *7 (N.D. Cal. 2005), *aff'd on other grounds by Huynh*, 503 F.3d at 847 ("true actual damages from the individual pirate's activities should instead be measured by the total costs it has paid for anti-pirate efforts plus its total revenue losses divided by the total number of pirates").

In addition to these calculation difficulties, Plaintiffs do not claim that their actual damages exceed $10,000.  In any event, there is insufficient evidence before the Court to conclude that actual damages exceed $10,000.  *See Huynh*, 2005 WL 5864467, at *7 (actual and per-day damage calculations rejected because they were insufficiently supported).

**2.      Per-Day Damages Do Not Exceed $10,000**

The Court next turns to the per-day calculation of damages.  Section 2520(c)(2)(B) provides for the assessment of statutory damages in the amount of $100 for each day of violation, or $10,000, whichever is greater.  As discussed above, Plaintiffs have demonstrated that Defendant was in

violation of the statute by purchasing an approximately two-year subscription to NFPS and IKS Rocket and then used an unauthorized server to access DISH Network.  Plaintiffs claim the records are not complete and fail to show every occurrence of access by Defendant.  Congress has provided only for a calculation of damages of "$100 a day *for each day* of violation" (emphasis added), however, it is unknown on how many days the violation occurred. The only available evidence is that the subscription covered approximately two years which is insufficient to determine the per-day damages.

### 3.      The Presumed Damage Award is $10,000

At the third step of the analysis, the Court is to compare the actual and the per-day damages and award the greater of the two figures, unless each amounts to less than $10,000.  Where both sets of damages are less than $10,000, the Court must presume a $10,000 award of damages.  *Dorris*, 179 F.3d at 430.  Since the actual damage and the per-day damage calculations in this case likely amount to less than $10,000, the $10,000 amount becomes the presumed damage award.  *Id.*

### 4.      The Court Should Award Statutory Damages of $10,000

The final step of the analysis is determining whether it is appropriate to award the statutory damages. The federal courts of appeals considering Section 2520(c) have concluded that this determination is within the discretion of the district courts, and have provided a range of criteria for the courts to consider in assessing the propriety of damages.  *See, e.g., Nalley*, 53 F.3d at 654; *Brown*, 371 F.3d at 818; *Reynolds*, 93 F.3d at 435.

As discussed by the Fourth Circuit in *DIRECTV, Inc. v. Rawlins*, such factors include (1) the severity or minimal nature of the violation; (2) whether there was actual damage to the victim; (3) the extent of any intrusion into the victim's privacy; (4) the relative financial burdens of the parties; (5) whether there was a reasonable purpose for the violation; and (6) whether there is any useful purpose to be served by imposing the statutory damages amount.  523 F.3d 318, 325-26 (4th Cir. 2008) (citing *Nalley*, 53 F.3d at 654).[7]

---

[7] Similarly, district courts have also considered factors such as "(1) whether the defendant profited by his violation; (2) whether there was any evidence that the defendant actually used his pirate access devices; (3) the extent of [plaintiff's] financial harm; (4) the extent of the defendant's violation; (5) whether the defendant had a legitimate reason for [her]

1    In applying this framework of factors, courts have determined that the presumptive $10,000
2    award of damages is excessive, citing a lack of evidence that the defendant profited from the pirate
3    access.  *See, e.g., DIRECTV, Inc. v. Kaas*, 294 F. Supp. 2d 1044, 1049 (N.D. Iowa 2003) (plaintiff's
4    motion for default judgment granted but no damages awarded under Section 2520(c)(2) because there
5    was "no evidence [defendant] profited from the pirate access device" and there was "no evidence he
6    even used the device, only that he received it").  However, in *Rawlins*, the appellate court specifically
7    held that whether the defendant "used the devices for commercial purposes [or] purchased them for
8    resale is not germane to an analysis of damages related to [the defendant's] patent violation of the
9    statute."  523 F.3d at 327.

10   Many district courts, including several in this circuit, have awarded statutory damages of
11   $10,000 upon default judgment, although not all have explicitly weighed the relevant factors.  *See,*
12   *e.g., DIRECTV, Inc. v. Turnbough*, No. 2:04-cv-2409-GEB-GGH, 2006 WL 4007549, at *2 (E.D. Cal.
13   Jan. 30, 2006) (awarding $10,000 statutory damages); *DIRECTV, Inc. v. Grosman*, No. 03-04176 CW,
14   2005 WL 1230791, at *2 (N.D. Cal. May 19, 2005) (awarding $10,000 statutory damages); *DIRECTV,*
15   *Inc. v. Bowen*, No. 2:04-cv-2407-GEB-GGB, 2005 WL 5155093, at * 2 (E.D. Cal. Dec. 8, 2005).

16   In this case, the somewhat minimal nature of Defendant's violation of the statute weighs
17   against the imposition of statutory damages.  The full extent of Defendant's access to the IKS server is
18   unknown because of incomplete records.  The fact that Plaintiffs cannot prove the number of
19   violations, however, does not weigh *heavily* against an imposition of statutory damages.   As the
20   Fourth Circuit noted in *Rawlins*, the lack of evidence as to the amount of the defendant's actual
21   personal use of the device to decode the signal should not weigh against statutory damages where the
22   paucity of evidence is attributable to the defendant's own default.  *Rawlins*, 523 F.3d at 327.  "To the
23   contrary, by providing district courts with the alternative of either actual or statutory damages, the
24   Wiretap Act provides a vehicle for awarding damages that does not stall merely because the defendant
25   has refused to participate in the process."  *Id*.

26

27   actions; (6) whether an award of damages would serve a legitimate purpose; and (7) whether the defendant was also subject
28   to another judgment based on the same conduct."  *Huynh*, 318 F. Supp. 2d at 1132.

13

Here, Defendant has refused to participate in the litigation.  Arguably, Plaintiffs would have been more capable of presenting evidence had they been provided with discovery.  Thus, the fact that Plaintiffs cannot establish on how many occasions Defendant violated the statute should not weigh heavily against awarding statutory damages.  As a result, this factor tilts only slightly against awarding statutory damages.  On the other hand, three competing factors weigh more heavily in favor of awarding statutory damages:  (1) Plaintiffs suffered actual damages, (2) there was no legitimate purpose for the violation of the statute, and (3) an award of statutory damages will serve an important purpose.

As to actual damage suffered by Plaintiffs, the evidence shows that Defendant purchased subscriptions to NFPS or IKS Rocket on November 2, 2011, and December 16, 2011, through PayPal.  Further, Defendant purchased a subscription prior to November 2011. Specifically, on October 22, 2010, Defendant sent a private message to username "nfps staff" to inquire about NFPS and asked whether he could pay for the "donation" via PayPal.  (*See* Doc. 10-2, Rogers Decl., ¶ 6.)  Defendant also asked member "bigevil69" if he could send the money through PayPal; days later, on October 27, 2010, Defendant sent another private message to "bigevil69" to inform the user he wanted another account, and asked if he should "be paying to the same email as last time." (*See* Doc. 10-2, Rogers Decl., ¶ 6.)  Defendant did so presumably to avoid paying higher subscription fees as a legitimate subscriber of DISH Network programming.  Through the NFPS and IKS Rocket subscriptions, Defendant enjoyed full access to all of DISH Network programming, including premium channels and pay-per-view events.  (Doc. 1, ¶ 28.)  Plaintiffs have sufficiently demonstrated that they suffered actual damages from Defendant's actions through the loss of a legitimate subscriber for the period Defendant accessed the encrypted signal.

The Court also finds there was no legitimate reason for Defendant's actions which weighs in favor of imposing statutory damages.  Plaintiffs' well-pled allegations and evidentiary support indicate that Defendant's subscription covered approximately a two-year time period from October 2010 until November 2012.  Defendant has demonstrated an unwillingness to respond to the complaint or seek to set aside the entry of default against him.  (*See* Doc. 8.)  In sum, there is no basis for the Court to conclude that Plaintiffs' well-pled allegations should not be taken as true.  If the allegations are

deemed to be true, there can be no legitimate reason for Defendant's actions.  *See Rounds*, 2012 WL 1158798, at *3 ("Here, the Complaint avers that Defendant, through a subscription, utilized the pirate access device on numerous occasions [ECF No. 1] ¶¶ 24-26.  There could be no legitimate reason for Defendant's actions.").  This factor weighs in favor of awarding statutory damages against Defendant.

Finally, an award of damages would serve an important purpose and this factor weighs strongly in favor of awarding statutory damages.  Awarding Plaintiffs no damages would effectively reward Defendant for wrongful actions by allowing the misconduct to remain unsanctioned.  As discussed by the Fourth Circuit in *Rawlins*, 523 F.3d at 326-27, a district court's refusal to award any damages without giving serious consideration to the adverse effects of allowing the misconduct to go unsanctioned is an abuse of discretion.[8]  Here, a refusal to award statutory damages incentivizes, rather than deters, Defendant and others from similar acts of piracy.  Thus, even if the actual damages to Plaintiffs in this case are somewhat de minimus, that factor is outweighed by the deterrent purpose that the statute serves in this matter.  *Rawlins*, 523 F.3d at 327-28 (whether a useful purpose would be served by awarding the statutory amount is a relevant factor for a district court to consider).

The Court finds it appropriate to recommend an award of $10,000 in statutory damages.  This amount is sufficient to hold Defendant accountable for misconduct and acts as a deterrent to others from committing similar acts in the future.  Accordingly, the Court recommends that the allowable statutory damages be awarded pursuant to 18 U.S.C. § 2520(c)(2)(B) in the amount of $10,000.

///

---

[8] As noted by this court in *Dish Network L.L.C. v. Sanchez*, 1:11-cv-01485-AWI-SKO, 2012 WL 2090439 (E.D. Cal. June 8, 2012), the district court's refusal to award damages in *Rawlins* was held by the appellate court to be "outside the heartland of judgments" because the district court declined to award damages under the Cable Act *and also* declined to award damages under the Wiretap Act.  The Fourth Circuit found that in most cases where plaintiff DIRECTV pursued defendants who stole programming through the use of pirate access devices, the district courts elected to award statutory damages under the range provided in the Cable Act, namely $1,000 to $10,000.  *Rawlins*, 523 F.3d at 328.  Those district courts then elected to decline to award additional damages for the same conduct under the Wiretap Act.  *Rawlins*, 523 F.3d at 328 n.11.  The Fourth Circuit concluded that "[w]here a court *reasonably concludes* that the purposes of the Wiretap Act are adequately served by an award of damages under the Cable Act, and that an additional $10,000 award premised on the same conduct would be gratuitous, there is no 'useful purpose' to be served by the imposition of additional statutory damages under 18 U.S.C. § 2520(c)(2)."  *Rawlins*, 523 F.3d at 328-29.  Here, Plaintiffs' motion for default judgment only seeks damages under the Wiretap Act (also referred to as the ECPA)  and the Court is not positioned to elect to award damages only under the Cable Act (also referred to as the Communications Act, 47 U.S.C. § 605).  The Court has found no authority suggesting that it is empowered to supplant the remedy sought in Plaintiffs' motion for default judgment with a different statutory remedy pled and prayed for in the complaint, but not requested as part of the default judgment.

**D.      Permanent Injunctive Relief Pursuant to 18 U.S.C. § 2520(b)(1) Should Be Granted**

Plaintiffs contend that permanent injunctive relief should be awarded under Section 2520(b)(1) to prevent Defendant from violating Plaintiffs' rights under the ECPA.  (Doc. 14-1, 9:16-12:20.) Specifically, Plaintiffs request that this Court enjoin Defendant from "circumventing or assisting others in circumventing DISH Network's security system, or otherwise intercepting or assisting other in intercepting DISH Network's satellite signal;" and "testing, analyzing, reverse engineering, manipulating, or otherwise extracting codes, data, or information from DISH Network's satellite receivers, smart cards, satellite data stream, or any other part or component of the DISH Network security system."  Section 2520(b)(1) provides that appropriate relief for a violation of Section 2520 includes "such preliminary and other equitable or declaratory relief as may be appropriate."  18 U.S.C. § 2520(b)(1).   Injunctive relief is appropriate when a party demonstrates (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The Court finds that Plaintiffs' request for a permanent injunction is appropriate.  Based on Defendant's piracy of Plaintiff's television programming, Plaintiffs have suffered irreparable injury as revenues have been diverted from Plaintiffs as a result of Defendant's conduct. *See Coxcom, Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir. 2008) (upholding district court grant of permanent injunction in light of the difficulty in measuring lost revenue from pay-per-view service).   Additionally, damages alone are inadequate to prevent future piracy without injunctive relief.  Defendant would suffer no hardship, since he would only be prevented from engaging in illegal activity. *Id.* (injunction does no more than require the defendant to comply with federal and state anti-piracy laws).  Further, the public interest would be served by protecting copyrights and aiding the enforcement of federal law. *Id.* ("the public has an interest in the enforcement of . . . statutes.").  The Court finds all the criteria for a permanent injunction have been met and therefore recommends that Defendant be permanently enjoined from circumventing or assisting others in circumventing Plaintiffs' security system and from intercepting or assisting others in intercepting Plaintiffs' satellite signal.

## IV.    CONCLUSION AND RECOMMENDATION

Based on a consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS as follows:

1.    Plaintiffs' motion for default judgment be GRANTED;

2.    Judgment be entered in this action against Defendant Armando Gonzalez as follows:

   a.    $10,000 statutory damages for violations of 18 U.S.C. §§ 2511(1)(a) and 2520(a); and

   b.    Immediate permanent injunctive relief enjoining Defendant and anyone acting in active concert or participation with, or at the direction or control of Defendant from (1) circumventing or assisting others in circumventing DISH Network's security system, or otherwise intercepting or assisting others in intercepting DISH Network's satellite signal; and (2) testing, analyzing, reverse engineering, manipulating, or otherwise extracting codes, data, or information from DISH Network's satellite receivers, smart cards, satellite data stream, or any other part or component of the DISH Network security system.

These findings and recommendations are submitted to the district judge assigned to this action pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty-eight (28) days of service of this recommendation, any party may file written objections to this order with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Order."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 13, 2013**                          **/s/ Sheila K. Oberto**
                                                                  UNITED STATES MAGISTRATE JUDGE

17

18